## CHANCELLOR, ETC., OF OXFORD UNIVERSITY v. WILMORE-ANDREWS PUB. CO.[1]

(Circuit Court, S. D. New York.    April 28, 1900.)

UNFAIR COMPETITION—"OXFORD" BIBLES.

The name "Oxford" on Bibles has so long been used to designate the Bibles prepared and published by the University of Oxford, England, as to have become identified with such particular publications as denoting their origin, and the use of such name by another publisher, having no connection with the place or name, can have no purpose except to deceive purchasers, and constitutes unfair competition.

In Equity.    Suit to enjoin the use of a trade-name.    On final hearing.

Rowland Cox, for plaintiff.

Louis F. Doyle, for defendant.

WHEELER, District Judge.    The University of Oxford, England, is a body corporate known by the name and syle by which this suit is brought.    Books appear to have been printed by it as early as the

[1] As to unfair competition in trade, see note to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

fifteenth century, and letters patent for printing books of all kinds, including Bibles, to have been granted to it by King Charles I. in the seventeenth century. It has printed Bibles of many kinds, prepared by its officers and scholars with great care, which are generally known as "Oxford Bibles." No other Bibles are published at Oxford, and these are ordered, sold, and bought by that name. Among the kinds is the Teachers' Bible, first published in 1876, which contains, besides the text, a Manual of Helps to the Study of the Bible, full of reliable information respecting the authors and books of the Bible and Palestine, a concordance, indices, tables, and maps. This, with new editions, has since been published and sold by that name continuously in this country and throughout the world. The defendant has printed and published a Bible specified on the title page as an "Oxford Bible: The S. S. Teachers' Edition," and on the back as a "Holy Bible; Oxford, S. S. Teachers' Edition." This suit is brought against this use of that name. The defendant denies any right of the plaintiff to the exclusive use of the word "Oxford" upon Bibles, and alleges that this name, as applied to Bibles, is used to designate and describe a style of Bible otherwise known as the "Divinity Circuit," bound in soft, flexible leather, with overlapping edges; that the plaintiff has lost any right it may have had to the use of this word by permitting others to use it; that the Bible with which the defendant is claimed to interfere was printed in this country; and that the defendant has altogether ceased using it.

It is insisted for the defendant that the name of a place of origin cannot become a valid trade-mark of goods and products, and that "Oxford" here is merely the name of the city of the plaintiff, and could not be exclusively used to distinguish the plaintiff's Bibles. But this word is a part of the plaintiff's name, and as such has given name to the plaintiff's Bibles, and has come to be a means of showing their origin. The defendant has no connection with the place or name, and this use of the name by the defendant can be for no purpose but to represent the defendant's Bibles as coming from the plaintiff. The plaintiff has no copyright of this work, and any one would, of course, have a clear right to print and publish it, but no one would have a right in any false manner to represent such a product as the work of the plaintiff. The use of the name upon the defendant's Bibles had a tendency to so represent, and to confuse the plaintiff's use of its name in its business.

That the plaintiff prints and publishes this work in America as well as at the university makes it none the less the plaintiff's product, and confers no right upon others to publish it in the name of the plaintiff, or to use the plaintiff's name in publishing it in America or elsewhere. The evidence does not show acquiescence of the plaintiff in use by others amounting to an abandonment of right by the plaintiff, nor establish that the name has thereby or otherwise become merely descriptive of the Bibles, instead of representing their origin, nor that an Oxford Bible is merely the "Divinity Circuit." The case shows sufficient interference by the defendant to furnish ground for commencing the suit, and the ceasing of the interference by the defendant does not take away the right of the plaintiff to a decree, with

costs.  Sufficient perception of profits does not, however, appear to warrant an accounting.  Rahtjen's American Composition Co. v. Holzappel's Composition Co. (C. C. A.; April 11, 1900) 101 Fed. 257.  Decree for a perpetual injunction, with costs.